IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN JONES, et al., | CASE NO. CV F 12-2067 LJO SMS |
| Plaintiff, | **ORDER ON CITIMORTGAGE'S F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 7.) |
| CITIMORTGAGE, INC., et al., | |
| Defendants. | |
| _____ / | |

## INTRODUCTION

Defendant CitiMortgage, Inc. ("CMI") seeks to dismiss as lacking sufficient facts plaintiffs Kevin Jones and Cheryl Jones' (collectively the "Joneses'") claims arising from attempts to modify their loan for their Merced property ("property"). The Joneses respond that they have "pled more than sufficient facts to allege the nature and extent of the wrongful conduct" committed by CMI. This Court considered CMI's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the February 13, 2013 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES without prejudice this action.

1

# BACKGROUND[1]

## Loan Modification

On July 31, 2006, the Joneses executed in CMI's favor a promissory note secured by a deed of trust on the property.

In April 2009, CMI informed the Joneses that they qualified for a loan modification to reduce their monthly payments to $1,395 if the Joneses remained 90 days late on their payments. After falling 90 days behind, the Joneses submitted $1,395 monthly payments during June to November 2009 "as instructed" by CMI.

In November 2009, CMI provided the Joneses a Home Affordable Modification Trial Period Plan ("HAMP trial"), which included a schedule for December 2009 and January and February 2010 payments. The HAMP trial obligated the Joneses to pay on scheduled dates amounts, "which includes payment for Escrow items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,395.00." The Joneses signed and returned the Hamp trial and submitted the HAMP trial payments up to November 2010 "as directed by" CMI.

In November 2010, CMI representative Kevin Jones informed the Joneses that CMI approved their permanent loan modification with a monthly payment around $1,600. CMI's November 5, 2010 letter ("November 5 letter") to the Joneses enclosed a Home Affordable Modification Agreement ("modification agreement"). The November 5 letter addressed an escrow account and stated:

> The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. . . . Your initial monthly escrow payment will be $500.58. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

The modification agreement's Section 3.C. includes a schedule of payments, including a $2,150.91 monthly payment for the first six years and an "Estimated Monthly Escrow Payment Amount" of "$000.00 may adjust periodically" and a "Total Monthly Payment" of $000.00 may adjust periodically."

---

[1] The factual recitation is derived generally from the Joneses' Complaint for Damages and Equitable Relief ("complaint"), the target of CMI's challenges, as well as other matters which this Court may consider.

**The Joneses' Modified Payments**

During December 2010, the Joneses attempted to submit their first $2,150.91 payment. CMI representatives advised that $2,150.91 was an unacceptable partial payment and that the Joneses were required to pay $2,651.19.[2] On January 10, 2011, CMI representative Ashanca agreed to accept the Joneses' $2,150.91 payment and advised that the Joneses should mail their monthly payments.

On January 28, 2011, the Joneses telephoned CMI to attempt to submit their January 2011 payment, and CMI representative Junell accepted it and informed the Joneses to mail their monthly payments. The Joneses mailed to CMI their February 2011 to April 2012 monthly payments of $2,150.91.

**The Joneses' Default**

On January 17, 2012, the Joneses received a CMI demand letter that they were in default for $12,778.09. The Joneses immediately contacted CMI, and CMI representative Airean informed them the default was due to failure to make escrow payments. The Joneses informed Airean that the November 5 letter explained that their modified loan contained an escrow account, that their initial escrow payment was $500.58, and that the escrow payment was included in their monthly loan payment as noted in Section 3.C. of the modification agreement, which set out an initial $2,150.91 monthly payment. Airean represented to the Joneses that Section 3.C. of the modification agreement reflected CMI's erroneous omission of the escrow payment and that the Joneses should have been making $2,600 monthly payments. Numerous CMI representatives and managers continued to represent to the Joneses that CMI had failed to include the escrow amount in their monthly payments and that the Joneses were required to make $2,600 monthly payments.

In May 2012, CMI returned the Joneses' payment with a letter from CMI's foreclosure department that CMI would not accept the Joneses' payments because their loan was in foreclosure. CMI also returned the Joneses' June, July and August 2012 payments.

On July 13, 2012, defendant Cal-Western Reconveyance recorded a notice of default for the property. On July 17, 2012, the Joneses requested CMI for McGraw Project assistance and were

---

[2] This Court is unclear how the Joneses arrive at $2,651.19 in that $2,150.91 plus $500.58 equals $2,651.49.

3

informed by CMI associate Brondy Leung ("Ms. Leung") that the Joneses did not qualify for such assistance due to CMI's mistake on their loan modification.

CMI's August 27, 2012 letter informed the Joneses that they were ineligible for HAMP modification. On September 4, 2012, CMI representative Brian telephoned the Joneses that they had been approved for a trial modification under CMI's Supplemental Modification Program with $2,291.79 monthly payments.

The Joneses rejected the modification offer and contested default. In September 2012, CMI accepted the Joneses' $2,150.91 payment.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

CMI seeks to dismiss the complaint's fraud and related claims as lacking facts to satisfy elements of the claims.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*

4

*Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second,

only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). A "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

With these standards in mind, this Court turns to CMI's challenges to the complaint's claims.

**Fraud**

The complaint's (first) intentional misrepresentation and (second) negligent misrepresentation claims allege that:

---

[3] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

6

1. CMI representatives falsely represented that the Joneses were approved for a HAMP modification with a $2,150.91 monthly payment for five years and which included monthly escrow payments;
2. After the Joneses had made the $2,150.91 monthly payments for more than a year, CMI informed the Joneses that they were in default for $12,778.09 due to CMI's failure to include the monthly escrow payment in the modification agreement schedule;
3. CMI "attempts to collect a higher monthly payment from Plaintiffs by asserting that [CMI] miscalculated the amount Plaintiffs should have been paying each month under the HAMP Modification"; and
4. CMI knew or should have known that the Joneses accepted the modification agreement based on its terms and the November 5 letter.

### *Elements*

Fraud elements for deceit are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843 (1997).

Negligent misrepresentation elements are "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal.App.3d 954, 962, 226 Cal.Rptr. 532 (1986). "As is true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty, imposed by contract, statute or otherwise, owed by a defendant to the injured person." *Eddy v. Sharp*, 199 Cal.App.3d 858, 864, 245 Cal.Rptr. 211 (1988). The determination of whether a duty exists is primarily a question of law. *Eddy*, 199 Cal.App.3d at 864, 245 Cal.Rptr. 211.

### *Misrepresentation*

CMI faults the complaint's absence of facts of false statements or intent to defraud the Joneses. CMI points to *Clark v. Countrywide Home Loans, Inc.*, 732 F.Supp.2d 1038, 1043-1044 (E.D. Cal. 2010), where a fellow judge of this Court addressed oral representations as to real property:

Certain types of contracts are invalid unless memorialized by a written document signed by the party against whom the contract is being enforced. Cal. Civ.Code § 1624. Mortgages and deeds of trust are subject to the statute of frauds. *Secrest v. Sec. Nat'l Mortg. Loan Trust 2002–2*, 167 Cal.App.4th 544, 552, 84 Cal.Rptr.3d 275 (2008). "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds" and must be in writing. *Id*. at 553, 84 Cal.Rptr.3d 275; *see also Basham v. Pac. Funding Group*, 2010 WL 2902368 (E.D. Cal. July 22, 2010) (dismissing a claim that defendant breached an oral contract to provide plaintiffs with a loan modification because, under the statute of frauds, "absent a writing, there can be no contract, much less a breach of contract."); *Justo v. Indymac Bancorp, et al.*, 2010 WL 623715 (E.D. Cal. Feb. 19, 2010) (plaintiff's claim that defendants breached an oral contract to modify his loan and cancel the foreclosure sale was barred by the statute of frauds). A written contract may not be modified by an oral agreement, unless that oral agreement is memorialized in writing and signed by the parties. Cal. Civ.Code § 1698.

Here, the alleged promise for a loan modification is subject to the statute of frauds. Absent a written agreement to modify the loan, any claim based upon an oral contract to modify the loan is barred by the statute of frauds. *See Secrest*, 167 Cal.App.4th at 552, 84 Cal.Rptr.3d 275.

"A modification of a contract is a change in the obligations of a party by a subsequent mutual agreement of the parties." *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 553, 84 Cal.Rptr.3d 275 (2008). "A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent." *Secrest*, 167 Cal.App.4th at 552, 84 Cal.Rptr.3d 275 (citing Cal. Civ. Code, § 1624)). An "agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." *Secrest*, 167 Cal.App.4th at 547, 84 Cal.Rptr.3d 275. "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." *Secrest*, 167 Cal.App.4th at 5553, 84 Cal.Rptr.3d 275.

CMI argues that even if CMI represented that the Joneses' mortgage payments would have been $1,600 monthly, such representation fails to comply with the statute of frauds to render it unenforceable.

The Joneses fail to address CMI's statute of frauds points. The Joneses point to complaint allegations that CMI representatives represented that the Joneses were approved for HAMP modification with $2,150.91 payments and that the Joneses agreed to HAMP modification based on information they received from CMI.

There is no dispute that an agreement to modify the Joneses' loan must be in writing signed by the parties. The Joneses point to no writing signed by CMI to commit CMI to a loan modification. Oral representations by CMI representatives are insufficient to support the complaint's fraud claims. The

November 5 letter and the modification agreement are the only potential writings to substantiate a CMI representation. The November 5 letter provides for a $500.58 monthly escrow payment to be included in the total monthly loan payment. The modification agreement's Section 3.C. mistakenly omits the $500.58 monthly escrow payment and references only the $2,150.91 principal and interest payment. The mistake is amplified in that Section 3.C. notes the "Total Monthly Payment" as "$000.00." The November 5 letter and Section 3.C. reflect CMI's mistake, not misrepresentations to support fraud in modification of the Joneses' loan. There is no precise allegation that CMI represented that the Joneses' total monthly payment would be $2,150.91, especially considering the complaint's allegations that CMI representatives told the Joneses that $2,150.91 monthly payments were insufficient.

*Reliance*

CMI challenges the Joneses' reliance on the November 5 letter's statement that the $500.58 monthly escrow payment is included in the total monthly payment reflected in modification agreement Section 3.C.'s schedule in that the schedule "was patently erroneous." CMI holds the Joneses to an obligation to investigate to ascertain CMI's mistake to omit the $500.58 monthly escrow payment, especially given complaint allegations that CMI representatives told the Joneses that $2,150.91 was an insufficient monthly payment. *See Cameron v. Cameron*, 88 Cal.App.2d 585, 594, 199 P.2d 443 (1948) ("If [one] becomes aware of facts that tend to arouse his suspicion, or if he has reason to believe that any representations made to him are false or only half true, it is his legal duty to complete his investigation and he has no right to rely on statements of the other contracting party.")

The Joneses argue that the complaint adequately pleads reliance in that the Joneses accepted HAMP modification based on terms and information in the modification agreement and HAMP modification summary, which is apparently the November 5 letter.

The November 5 letter clearly states: "Your initial monthly escrow payment will be $500.58." Section 3.C. of the modification agreement clearly denotes an "Estimated Monthly Escrow Payment Amount" and a "Total Monthly Payment," but mistakenly reflects "$000.00" for the escrow and total payments. Such inconsistency constitutes facts to raise suspicion. In fact, the complaint suggests that the Joneses were no less than on notice of the error in that they made repeated telephone calls to CMI until they encountered CMI representatives who accepted their payments when others had not. The

9

complaint lacks sufficient facts to support the Joneses' reliance on purported statements that their monthly payments would be no more than $2,150.91.

### *Damage*

CMI faults the complaint's lack of allegations of damage caused by the Joneses' reliance on alleged misrepresentations. CMI notes that in a fraud case, actual reliance arises when a misrepresentation immediately causes a plaintiff's conduct to alter his legal relations, and absent such representation, the plaintiff would not, in all reasonable probability, have entered into the contract or other transaction. *See Hall v. Time, Inc.*, 158 Cal.App.4th 847, 855, n. 2, 70 Cal.Rptr. 466 (2008). CMI points to the complaint's failure to allege that the Joneses would not have entered into the modification agreement had they known monthly payments would be $2,651.19 and that the Joneses made unnecessary payments.

The Joneses claim their damages include overcharges, loss of reputation and good will, destruction of credit, and potential loss of the property.

This Court agrees with CMI that the complaint lacks facts to support damages arising from purported fraud. The Joneses ignore that despite their loan modification attempts, they remained subject the original loan terms. The complaint fails to allege cognizable damages attributable to CMI's purported fraud.

The complaint's fraud claims lack sufficient facts to support necessary elements. The Joneses' detailed discussion of factors to ascertain duty obfuscate the primary issue of pleading sufficient facts to support fraud. Moreover, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991) (citing *Wagner v. Benson*, 101 Cal.App.3d 27, 34–35, 161 Cal.Rptr. 516 (1980)). "Just as approving an initial loan is within a lender's conventional role, loan modification is also intimately tied to Defendant's lending role." *Gutierrez v. PNC Mortg.*, 2012 WL 1033063, at *5 (S.D. Cal. 2012) (internal quotations omitted). The complaint's inferences are that the Joneses attempted to take advantage of a mistake in Section 3.C. of the modification agreement, not that they are victims of CMI's fraud. Out of an abundance of caution, this Court grants the Joneses an attempt to amend the

complaint's fraud claims.

### Breach Of Implied Covenant Of Good Faith And Fair Dealing

The complaint's (third) breach of implied covenant of good faith and fair dealing claim ("implied covenant claim") faults CMI's instructing the Joneses to make modified $2,150.91 payments and representing that such payments included monthly escrow payments, accepting such payments for more than a year, and later informing the Joneses that the payments were insufficient. The implied covenant claim alleges that CMI "wrongfully interfered with Plaintiffs' right to receive the benefit of their contract by falsely assuring them that their payments under the HAMP Modification included amounts required to be paid into escrow and then informing them that there was a substantial deficiency against their account for failure to remit a separate escrow payment."

CMI faults the complaint's absence of facts of a fully executed modification agreement or "a special circumstance" to support an implied covenant claim, especially given that CMI' alleged wrongdoing did not address the Joneses' original promissory note and deed of trust.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000) (quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 49, 275 Cal.Rptr. 17 (1990). "Without a contractual relationship, [plaintiffs] cannot state a cause of action for breach of the implied covenant." *Smith*, 225 Cal.App.3d at 49, 275 Cal.Rptr. 17.

The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted). "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107,

1120, 76 Cal.Rptr.3d 585 (2008). "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352 (2000)).

"Generally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (applying California law). The "implied covenant tort is not available to parties of an ordinary commercial transaction where the parties deal at arms' length." *Pension Trust Fund,* 307 F.3d at 955. California courts do not invoke a special relationship between a lender and borrower. *See Kim v. Sumitomo Bank*, 17 Cal.App.4th 974, 979, 21 Cal.Rptr.2d 834 (1993) ("the relationship of a bank-commercial borrower does not constitute a special relationship for the purposes of the covenant of good faith and fair dealing"); *Mitsui Manufacturers Bank v. Superior Court*, 212 Cal.App.3d 726, 729, 260 Cal.Rptr. 793 (1989) (borrower precluded to assert tortious breach of implied covenant of good faith and fair dealing claim against lender). A loan transaction generally does not give rise to a fiduciary duty to a borrower "absent special circumstances." *Oaks Management Corp. v. Superior Court*, 145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006).

The Joneses' base the implied covenant claim on CMI's alleged representation that their HAMP modification payments would be $2,150.91, CMI's later demand for unpaid escrow payments after accepting $2,150.91 payments, and CMI's refusal to accept further $2,150.91 payments and pursuing foreclosure. The Joneses argue that CMI refused their HAMP modification payments to engineer the Joneses' default.

As discussed above, the complaint lacks facts of a sufficient contract and in turn CMI's interference with the Joneses' rights under such contract. It bears repeating that the November 5 letter provides for a $500.58 monthly escrow payment to be included in the total monthly loan payment. The modification agreement's Section 3.C. mistakenly omits the $500.58 monthly escrow payment and references only the $2,150.91 principal and interest payment and not the total monthly payment. The complaint attempts to create obligations not contemplated by the November 5 letter or the modification

12

agreement.

Moreover, the complaint lacks facts to demonstrate that the Joneses' loan was anything other than typical to create no special circumstances to invoke heightened duties. No special relationship arises between CMI and the Joneses. *See Smith*, 225 Cal.App.3d at 49, 275 Cal.Rptr. 17 ("Moreover, even if there were a contractual relationship between the parties, [plaintiffs] have pled no facts establishing a 'special relationship' between them which could justify extending tort liability for bad faith to the present context"). The complaint makes no attempt to allege such a special relationship with meaningful facts.

An implied covenant claim fails in absence of allegations of a sufficient contractual or special relationship between CMI and the Joneses. Out of an abundance of caution, this Court grants the Joneses an attempt to amend the complaint's implied covenant claim.

**Wrongful Foreclosure**

The complaint's (fourth) wrongful foreclosure claim alleges that the Joneses "did not breach the mortgage" in that they made payments pursuant to CMI's "explicit instructions" and that CMI "breached the mortgage when it placed Plaintiffs in foreclosure and attempted to alter the terms of Plaintiffs' HAMP Modification without notice or right."

CMI argues that the complaint itself dooms a wrongful foreclosure claim. CMI points to complaint allegations that:

1. Beginning December 2010, CMI representatives advised that $2,150.91 was an unacceptable partial payment and that the Joneses were required to pay $2,651.19 monthly;
2. In January 2012, the Joneses received CMI's demand letter six months prior to recording of the notice of default; and
3. The Joneses made $2,150.91 partial payments and sought out a CMI representative who would accept them.

CMI faults the absence of allegations that CMI advised the Joneses that $2,150.91 was the correct monthly payment. CMI takes issue with the absence of damages in that complaint fails to allege that the Joneses "made any payments that they were not already obligated to make pursuant to the subject loan."

CMI attributes alleged damages to the Joneses' "failure to pay the escrow amount identified" in the November 5 letter.

To support the wrongful foreclosure claim, the Joneses argue that they continued to make their monthly payments "in good faith while they contest[ed] the alleged default" and that CMI, not the Joneses, created the default.

Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of trust with a power of sale clause. "Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000). A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the applicable California Civil Code sections:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25

Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

"A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777. "As a general rule, a trustee's sale is complete upon acceptance of the final bid." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436 (2003). "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted).

"A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'" *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)). "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity." *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413. The "burden of proof rests with the party attempting to rebut this presumption." *Herrera v. Federal Nat. Mortg. Assn.*, 205 Cal.App.4th 1495, 1505, 141 Cal.Rptr.3d 326 (2012).

To challenge foreclosure, "it is necessary for the complaint to state a case within the code sections for which reason it is essential to allege the facts affecting the validity and invalidity of the instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940). A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970). A "plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests." *Herrera v. Federal Nat. Mortg. Assn.*, 205 Cal.App.4th 1495, 1507, 141 Cal.Rptr.3d 326 (2012).

The complaint lacks meaningful facts of a specific statutory irregularity or misconduct in foreclosure proceedings attributable specifically to CMI. There are no allegations that foreclosure has been completed with a trustee's property sale. The wrongful foreclosure claim sounds in breach of

contract, not fault with foreclosure procedures. The complaint lacks allegations to overcome the presumption of foreclosure validity to warrant the wrongful foreclosure claim's dismissal. Out of an abundance of caution, this Court grants the Joneses an attempt to amend the wrongful foreclosure claim.

### **Unlawful Business Practices**

The complaint's fifth claim alleges violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq. The claim alleges that CMI's conduct "alleged above, constitutes unlawful, unfair, and fraudulent business practices" under the UCL. The claim alleges that CMI "is in the routine practice of fraudulently and/or negligently servicing home mortgage loans" and that when CMI "discovers mistakes it has made in servicing, it places the burden on homeowners, often forcing them into defaults created due to [CMI's] own wrongdoing or error."

CMI faults the complaint's failure to allege a predicate violation of law to support a UCL claim.

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr. 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200). The UCL establishes three varieties of unfair competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000). An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)). "A business practice is 'unlawful' if it is 'forbidden by law.'" *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002) (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999). The UCL "thus creates an independent action when a business practice violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79. According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins.,* 2 Cal.4th at 383, 6 Cal.Rptr.2d 487.

A fellow district court has explained the borrowing of a violation of law other than the UCL:

>    To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

*Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone*, 20 Cal.4th 163,187, 83 Cal.Rptr.2d 548 (1999). A business practice is unfair when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647, 58 Cal.Rptr.2d 89 (1996) (internal quotations and citations omitted). The "unfairness" prong of the UCL "does not give the courts a general license to review the fairness of contracts." *Samura v. Kaiser Found. Health Plan*, 17 Cal.App.4th 1284, 1299 & n. 6, 22 Cal.Rptr.2d 20 (1993).

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived," *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1167, 93 Cal.Rptr.2d 439 (2000); *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. 2005). A UCL "plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question." *Schnall*, 78 Cal.App.4th at 1167, 93 Cal.Rptr.2d 439.

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

CMI argues that the complaint lacks a UCL claim in the absence of facts of fraud or violation

of law. CMI contends that conclusory allegations that CMI "is in the practice of fraudulently servicing loans is not enough" to support a UCL claim, especially given the complaint's absence of allegations of the Joneses' damages or public deception from CMI's purported unfair business practices or

The complaint lacks facts of an unlawful, unfair or fraudulent business practices to support a UCL claim, despite the Joneses' claim of "multiple violations of specific statutory and common provisions." As demonstrated above, the complaint's claims fail and thus cannot serve as a predicate violation for a UCL claim. Out of an abundance of caution, this Court grants the Joneses an attempt to amend the complaint's UCL claim.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES without prejudice this action and all claims;
2. ORDERS the Joneses, no later than February 25, 2013, to file and serve a first amended complaint; and
3. ORDERS CMI, no later than March 18, 2013, to file and serve a response to the first amended complaint.

If the Joneses elect to file a first amended complaint, this Court ADMONISHES the Joneses to pursue only claims based on sufficient supporting facts and law and that this Court will grant the Joneses no further attempts to plead claims. If the Joneses elect not to file a first amended complaint, this Court will close this action.

IT IS SO ORDERED.

Dated:   **February 7, 2013**            /s/  **Lawrence J. O'Neill**
                                         UNITED STATES DISTRICT JUDGE