UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN JONES, et al., | CASE NO. CV F 12-2067 LJO SMS |
| Plaintiff, | **ORDER ON CITIMORTGAGE'S F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 15.) |
| CITIMORTGAGE, INC., et al., | |
| Defendants. | |

# INTRODUCTION

Defendant CitiMortgage, Inc. ("CMI") seeks to dismiss as insufficiently pled plaintiffs Kevin Jones and Cheryl Jones' (collectively the "Joneses") tort claims arising from attempts to modify their loan for their Merced property ("property"). The Joneses respond that their operative First Amended Complaint for Damages and Equitable Relief ("FAC") pleads "more than sufficient facts to allege the nature and extent" of CMI's wrongs to support elements of the FAC's claims. This Court considered CMI's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the April 25, 2013 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES this action against CMI.

# BACKGROUND[1]

## Loan Modification

On July 31, 2006, the Joneses executed in CMI's favor a promissory note secured by

---

[1] The factual recitation generally summarizes the FAC and other matters which this Court may consider.

1

a deed of trust on the property.

In April 2009, CMI informed the Joneses that they qualified for a loan modification to reduce their monthly payments to $1,395 if the Joneses remained 90 days late on their payments. After falling 90 days behind, the Joneses submitted $1,395 monthly payments during June to November 2009 "as instructed" by CMI.

In November 2009, CMI provided the Joneses a Home Affordable Modification Trial Period Plan ("HAMP trial"), which included a schedule for December 2009 and January and February 2010 payments. The HAMP trial obligated the Joneses on scheduled dates to pay for "Escrow items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,395.00." The Joneses signed and returned the HAMP trial and submitted HAMP trial payments up to November 2010 "as directed by" CMI.

In November 2010, a CMI representative informed Kevin Jones that CMI approved the Joneses' permanent loan modification with a monthly payment around $1,600. CMI's November 5, 2010 letter ("November 5 letter") to the Joneses enclosed a Home Affordable Modification Agreement ("modification agreement"). The November 5 letter addressed an escrow account and stated:

> The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. . . . Your initial monthly escrow payment will be $500.58. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

The modification agreement's Section 3.C. includes a schedule of payments, including a $2,150.91 monthly payment for the first six years and an "Estimated Monthly Escrow Payment Amount" of "$000.00 may adjust periodically" and a "Total Monthly Payment" of $000.00 may adjust periodically."

### The Joneses' Modified Payments

During December 2010, the Joneses attempted to submit their first $2,150.91 payment. CMI representatives advised that $2,150.91 was an unacceptable partial payment and that the Joneses were required to pay $2,651.19. On January 10, 2011, CMI representative Ashanca accepted the Joneses' $2,150.91 payment and advised that the Joneses should mail their monthly payments.

On January 28, 2011, the Joneses telephoned CMI to attempt to submit their January 2011 payment, and CMI representative Junell accepted it and informed the Joneses to mail their monthly payments. The Joneses mailed to CMI their February 2011 to April 2012 monthly payments of $2,150.91.

### **The Joneses' Default**

On January 17, 2012, the Joneses received a CMI demand letter that they were in default for $12,778.09. The Joneses immediately contacted CMI, and CMI representative Airean informed them the default was due to failure to make escrow payments. The Joneses informed Airean that the November 5 letter explained that their modified loan contained an escrow account, that their initial escrow payment was $500.58, and that the escrow payment was included in their monthly loan payment as noted in Section 3.C. of the modification agreement, which set out an initial $2,150.91 monthly payment. Airean represented to the Joneses that Section 3.C. of the modification agreement reflected CMI's erroneous omission of the escrow payment and that the Joneses should have been making $2,600 monthly payments. Numerous CMI representatives and managers continued to represent to the Joneses that CMI had failed to include the escrow amount in their monthly payments and that the Joneses were required to make $2,600 monthly payments.

In May 2012, CMI returned the Joneses' payment with a letter from CMI's foreclosure department that CMI would not accept the Joneses' payments because their loan was in foreclosure. CMI also returned the Joneses' June, July and August 2012 payments.

On July 13, 2012, defendant Cal-Western Reconveyance recorded a notice of default for the property. On July 17, 2012, the Joneses requested CMI for McGraw Project assistance and were informed by CMI associate Brondy Leung that the Joneses did not qualify for such assistance due to CMI's mistake on their loan modification.

CMI's August 27, 2012 letter informed the Joneses that they were ineligible for HAMP modification. On September 4, 2012, CMI representative Brian telephoned the Joneses that they had been approved for a trial modification under CMI's Supplemental Modification Program with $2,291.79 monthly payments.

The Joneses rejected the modification offer and contested default. In September 2012, CMI accepted the Joneses' $2,150.91 payment.

/ / /

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

CMI seeks to dismiss the FAC's tort and related claims as lacking facts to satisfy necessary elements.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955,

1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). A "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

With these standards in mind, this Court turns to CMI's challenges to the FAC's claims.

### **Fraud**

The FAC's (first) intentional misrepresentation and (second) negligent misrepresentation claims allege that:

1. CMI representatives falsely represented that the Joneses were approved for a HAMP modification with a $2,150.91 monthly payment for five years and which included monthly escrow payments;

6

2.   CMI made untrue representations regarding the modification agreement and "the necessity to remit a separate escrow payment in addition to the payment amount required" in the modification agreement's section 3.C.

3.   After the Joneses had made $2,150.91 monthly payments for more than a year, CMI informed the Joneses that they were in default for $12,778.09 due to CMI's failure to include the monthly escrow payment in the modification agreement schedule;

4.   CMI "attempts to collect a higher monthly payment from Plaintiffs by asserting that [CMI] miscalculated the amount Plaintiffs should have been paying each month under the HAMP Modification"; and

5.   CMI knew or should have known that the Joneses accepted the modification agreement based on its terms and the November 5 letter.

### *Elements*

Fraud elements for deceit are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843 (1997).

Negligent misrepresentation elements are "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal.App.3d 954, 962, 226 Cal.Rptr. 532 (1986). "As is true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty, imposed by contract, statute or otherwise, owed by a defendant to the injured person." *Eddy v. Sharp*, 199 Cal.App.3d 858, 864, 245 Cal.Rptr. 211 (1988). The determination of whether a duty exists is primarily a question of law. *Eddy*, 199 Cal.App.3d at 864, 245 Cal.Rptr. 211.

### *Misrepresentation*

CMI faults the FAC's absence of facts of false statements or intent to defraud the Joneses. CMI points to *Clark v. Countrywide Home Loans, Inc.*, 732 F.Supp.2d 1038, 1043-1044 (E.D. Cal. 2010), where a fellow judge of this Court addressed oral representations as

to real property:

> Certain types of contracts are invalid unless memorialized by a written document signed by the party against whom the contract is being enforced. Cal. Civ. Code § 1624. Mortgages and deeds of trust are subject to the statute of frauds. *Secrest v. Sec. Nat'l Mortg. Loan Trust 2002–2*, 167 Cal.App.4th 544, 552, 84 Cal.Rptr.3d 275 (2008). "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds" and must be in writing. *Id.* at 553, 84 Cal.Rptr.3d 275; *see also Basham v. Pac. Funding Group*, 2010 WL 2902368 (E.D. Cal. July 22, 2010) (dismissing a claim that defendant breached an oral contract to provide plaintiffs with a loan modification because, under the statute of frauds, "absent a writing, there can be no contract, much less a breach of contract."); *Justo v. Indymac Bancorp, et al.*, 2010 WL 623715 (E.D. Cal. Feb. 19, 2010) (plaintiff's claim that defendants breached an oral contract to modify his loan and cancel the foreclosure sale was barred by the statute of frauds). A written contract may not be modified by an oral agreement, unless that oral agreement is memorialized in writing and signed by the parties. Cal. Civ. Code § 1698.
>
> Here, the alleged promise for a loan modification is subject to the statute of frauds. Absent a written agreement to modify the loan, **any claim based upon an oral contract to modify the loan is barred** by the statute of frauds. *See Secrest*, 167 Cal.App.4th at 552, 84 Cal.Rptr.3d 275.  (Bold added.)

"A modification of a contract is a change in the obligations of a party by a subsequent mutual agreement of the parties." *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 553, 84 Cal.Rptr.3d 275 (2008). "A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent." *Secrest*, 167 Cal.App.4th at 552, 84 Cal.Rptr.3d 275 (citing Cal. Civ. Code, § 1624)). An "agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." *Secrest*, 167 Cal.App.4th at 547, 84 Cal.Rptr.3d 275. "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." *Secrest*, 167 Cal.App.4th at 5553, 84 Cal.Rptr.3d 275.

CMI argues that even if CMI represented that the Joneses' mortgage payments

8

would have been $1,600 monthly, such representation fails to comply with the statute of frauds to render it unenforceable.

The Joneses argue that CMI misrepresented monthly payments due under the modification agreement and demanded higher amounts. The Joneses argue that "parol evidence may not be used as a shield . . . to prevent proof of fraud."

Parol evidence is not at issue. The Joneses cite to *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Ass'n*, 55 Cal.4th 1169, 1174, 291 P.3d 316 (2013), which explains the parol evidence rule:

> It is founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement. The written terms supersede statements made during the negotiations. Extrinsic evidence of the agreement's terms is thus *irrelevant,* and cannot be relied upon. . . . [T]he parol evidence rule, unlike the statute of frauds, does not merely serve an evidentiary purpose; it determines the enforceable and incontrovertible terms of an integrated written agreement. . . . The purpose of the rule is to ensure that the parties' final understanding, deliberately expressed in writing, is not subject to change. (Citations and internal quotations omitted.)

The Joneses fail to address CMI's applicable statute of frauds points. There is no dispute that an agreement to modify the Joneses' loan must be in writing signed by the parties. The Joneses point to no writing signed by CMI to commit CMI to a loan modification on the terms claimed by the Joneses. Oral representations by CMI representatives are insufficient to support the FAC's fraud claims. The November 5 letter and the modification agreement are the only potential writings to substantiate a CMI representation. The November 5 letter provides for a $500.58 monthly escrow payment to be included in the total monthly loan payment. The modification agreement's Section 3.C. mistakenly omits the $500.58 monthly escrow payment and references only the $2,150.91 principal and interest payment. The mistake is amplified in that Section 3.C. notes the "Total Monthly Payment" as "$000.00." The November 5 letter and Section 3.C. reflect CMI's mistake, not misrepresentations to support fraud in modification of the Joneses' loan. There is no precise allegation that CMI represented that the Joneses' total monthly payment would be $2,150.91, especially considering the FAC's allegations that CMI representatives told the Joneses that $2,150.91 monthly payments were insufficient. Moreover, the Joneses

remained obligated to original loan terms and arguably misuse parol evidence to seek to modify those terms.

### *Reliance*

CMI challenges the Joneses' reliance on the November 5 letter's statement that the $500.58 monthly escrow payment is included in the total monthly payment reflected in modification agreement Section 3.C.'s schedule in that the schedule "was patently erroneous." CMI holds the Joneses to an obligation to investigate to ascertain CMI's mistake to omit the $500.58 monthly escrow payment, especially given the disparity between the November 5 letter and the schedule of payments reflected in the modification agreement's Section 3.C. *See Cameron v. Cameron*, 88 Cal.App.2d 585, 594, 199 P.2d 443 (1948) ("If [one] becomes aware of facts that tend to arouse his suspicion, or if he has reason to believe that any representations made to him are false or only half true, it is his legal duty to complete his investigation and he has no right to rely on statements of the other contracting party.")

The Joneses argue that the FAC adequately pleads reliance in that the Joneses accepted HAMP modification based on terms and information in the modification agreement and HAMP modification summary, which is apparently the November 5 letter.

The November 5 letter clearly states: "Your initial monthly escrow payment will be $500.58." Section 3.C. of the modification agreement clearly denotes an "Estimated Monthly Escrow Payment Amount" and a "Total Monthly Payment," but mistakenly reflects "$000.00" for the escrow and total payments. Such inconsistency constitutes facts to raise suspicion. In fact, the FAC suggests that the Joneses were no less than on notice of the error in that they made repeated telephone calls to CMI until they encountered CMI representatives who accepted their payments when others had not. The FAC lacks sufficient facts to support the Joneses' reliance on purported statements that their monthly payments would be no more than $2,150.91.

### *Damages*

CMI faults the FAC's lack of allegations of damages caused by the Joneses' reliance on alleged misrepresentations. CMI notes that in a fraud case, actual reliance arises when a misrepresentation immediately causes a plaintiff's conduct to alter his legal relations, and absent such representation, the plaintiff would not, in all reasonable probability, have

entered into the contract or other transaction. *See Hall v. Time, Inc.*, 158 Cal.App.4th 847, 855, n. 2, 70 Cal.Rptr. 466 (2008). CMI points to the FAC's failure to allege that the Joneses would not have entered into the modification agreement had they known monthly payments would be $2,651.19 and that the Joneses made unnecessary payments.

The Joneses claim their damages include overcharges, loss of reputation and good will, destruction of credit, and potential loss of the property.

This Court agrees with CMI that the FAC lacks facts to support damages arising from purported fraud. The Joneses ignore that despite their loan modification attempts, they remained subject to original loan terms. The FAC fails to allege cognizable damages attributable to CMI's purported fraud, especially given the absence of allegations that CMI's conduct caused the Joneses to alter their legal relations.

The FAC's fraud claims lack sufficient facts to support necessary elements. The Joneses' detailed discussion of factors to ascertain duty in connection with negligent misrepresentation obfuscate the primary issue of pleading sufficient facts to support fraud. Moreover, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (1991) (citing *Wagner v. Benson*, 101 Cal.App.3d 27, 34–35, 161 Cal.Rptr. 516 (1980)). "Just as approving an initial loan is within a lender's conventional role, loan modification is also intimately tied to Defendant's lending role." *Gutierrez v. PNC Mortg.*, 2012 WL 1033063, at *5 (S.D. Cal. 2012) (internal quotations omitted). The FAC's inferences are that the Joneses attempted to take advantage of a mistake in Section 3.C. of the modification agreement, not that they are victims of CMI's fraud.

### Negligence

The FAC adds a (third) negligence claim that CMI "breached its duty to Plaintiffs to service Plaintiffs' loan with reasonable care" and "represented to Plaintiffs that they had been approved for a HAMP Modification pursuant to which they were required to submit a payment of $2,150,91" but "demanded a substantially higher monthly payment."

CMI faults the negligence claim in the absence of facts to support CMI's duty to the Joneses. The Joneses place on CMI a duty "to avoid making partial or misleading representations that effectively conceal material facts."

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark*, 231 Cal.App.3d at 1095, 283 Cal.Rptr. 53. "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56 Cal.Rptr.2d 756 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.*, 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

"The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997).

There is no actionable duty between a lender and borrower in that loan transactions are arms-length. A lender "owes no duty of care to the [borrowers] in approving their loan. Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner*, 101 Cal.App.3d at 35, 161 Cal.Rptr. 516 (citing several cases). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53; *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal.Rptr. 616 (1978) (no lender liability when lender did not engage "in any activity outside the scope of the normal activities of a lender of construction monies").

"Public policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516. The success of a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender

lacked duty to disclose "any information it may have had"). "It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991).

CMI faults the FAC's absence of facts to support its actionable duty owed to the Joneses let alone breach of such duty to cause damage. CMI notes that the FAC addresses the Joneses' loan repayment and offers nothing to conclude that CMI's conduct was "beyond the domain of the usual money lender." CMI explains that loan modification is intimately tied to lending and provides no duty to support a negligence claim.

The FAC insufficiently attempts to allege CMI's cognizable a duty of care let alone its breach. The Joneses lack a negligence claim based on a CMI's lender and/or servicer roles, particularly in the absence of a duty to forego foreclosure or to provide loan modification. "No such duty exists . . . to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." *Renteria v. United States*, 452 F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan"). "A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower." *Sierra-Bay Fed.*, 227 Cal.App.3d at 334, 277 Cal.Rptr. 753. CMI had "no interest in the loan" in its role as loan servicer. *See Cleveland v. Deutsche Bank Nat. Trust Co.*, 2009 WL 250017, at *3 (S.D. Cal. 2009).

CMI owed no actionable duty of care to plaintiffs arising from plaintiffs' dissatisfaction with a loan modification. The Joneses claim of an alleged duty to avoid concealing facts addresses their original loan, not loan modification, and the FAC lacks allegations as to CMI's original loan representations. The FAC lacks facts of special circumstances to impose duties on CMI in that the FAC depicts an arms-length transaction, nothing more. The FAC fails to substantiate a special lending or other relationship or an actionable breach of duty to substantiate a negligence claim. The negligence claim fails.

Given the FAC's failure to allege a cognizable negligence claim, this Court need not address CMI's request to strike the negligence claim as a claim beyond that contemplated by this Court's order granting the Joneses leave to file an amended complaint.

**Unlawful Business Practices**

The FAC's fourth claim alleges violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq. The claim alleges that CMI's "conduct, as alleged above, constitutes unlawful, unfair, and fraudulent business practices" under the UCL. The claim alleges that CMI "is in the routine practice of fraudulently and/or negligently servicing home mortgage loans" and that when CMI "discovers mistakes it has made in servicing, it places the burden on homeowners, often forcing them into defaults created due to [CMI's] own wrongdoing or error."

*Standing*

CMI challenges the FAC's failure to allege that Joneses suffered an injury cognizable under the UCL to establish the Joneses' standing.

California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition." "This provision requires [plaintiff] to show that she has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–60 (9th Cir.2009), and also requires a 'causal connection' between [defendant's] alleged UCL violation and her injury in fact, *Hall v. Time Inc.*, 158 Cal.App.4th 847, 70 Cal.Rptr.3d 466, 471–72 (2008)." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-1205 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 1817 (2011).

Business and Professions Code section 17203 addresses UCL relief and provides in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. (Bold added.)

"In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's remedies are 'generally limited to injunctive relief and restitution.'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

Defendants correctly note the FAC's absence of facts of plaintiffs' money or property allegedly lost in that they were obligated to pay their loan and faced foreclosure if they failed to meet their obligations. Defendants are further correct that foreclosure of the property fails to support a UCL claim in the absence of allegations of the Joneses' performance to avoid default. The FAC lacks facts to support the Joneses' standing to seek UCL relief to warrant dismissal of the UCL claim.

CMI further faults the FAC's failure to allege a predicate violation of law to support a UCL claim.

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr. 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200). The UCL establishes three varieties of unfair competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000). An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale*, 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)). "A business practice is 'unlawful' if it is 'forbidden by law.'" *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002) (quoting *Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999). The UCL "thus creates an independent action when a business practice violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79. According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins.*, 2 Cal.4th at 383, 6 Cal.Rptr.2d 487.

A fellow district court has explained the borrowing of a violation of law other than the UCL:

> To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular*

> *Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

*Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008), *affirmed in part, reversed in part*, 613 F.3d 1195 (2010).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone*, 20 Cal.4th 163,187, 83 Cal.Rptr.2d 548 (1999).  A business practice is unfair when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647, 58 Cal.Rptr.2d 89 (1996) (internal quotations and citations omitted).  The "unfairness" prong of the UCL "does not give the courts a general license to review the fairness of contracts." *Samura v. Kaiser Found. Health Plan*, 17 Cal.App.4th 1284, 1299 & n. 6, 22 Cal.Rptr.2d 20 (1993).

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived," *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1167, 93 Cal.Rptr.2d 439 (2000); *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. 2005).  A UCL "plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question." *Schnall*, 78 Cal.App.4th at 1167, 93 Cal.Rptr.2d 439.

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

CMI argues that the FAC lacks a UCL claim in the absence of facts of violation of law, unfairness or fraud. CMI contends that conclusory allegations that CMI "is in the practice of fraudulently servicing loans is not enough" to support a UCL claim, especially given the FAC's absence of allegations of the Joneses' damages or public deception from CMI's purported unfair business practices.

The FAC lacks facts of an unlawful, unfair or fraudulent business practices to support a UCL claim, despite the Joneses' claim of "multiple violations of specific statutory and common provisions." As demonstrated above, the FAC's claims fail and thus cannot serve as a predicate violation for a UCL claim. The FAC's UCL claim fails with its other claims.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action and all claims against CMI;
2. DIRECTS the clerk to enter judgment in favor of defendant CitiMortgage, Inc. and against plaintiffs Kevin Jones and Cheryl Jones in that there is no just reason to delay to enter such judgment given that the Joneses' claims against CMI and its alleged liability are clear and distinct from claims against and liability of other defendants. *See* F.R.Civ.P. 54(b);
3. ORDERS the Joneses, no later than April 29, 2013, to file papers either to: (a) dismiss the remainder of this action and remaining defendants; or (b) to show cause why this Court should not dismiss this action against any remaining defendants, including Cal-Western Reconveyance Corporation; and

**ADMONISHES the Joneses and their counsel that this Court will dismiss this action against any remaining defendants if the Joneses fail to comply with this order and fail to file timely papers either to: (a) dismiss the remainder of the action and remaining defendants; or (b) show cause why this Court should not**

/ / /

/ / /

/ / /

**dismiss this action against any remaining defendants, including Cal-Western Reconveyance Corporation.**

IT IS SO ORDERED.

Dated: **April 19, 2013**           /s/ **Lawrence J. O'Neill**

UNITED STATES DISTRICT JUDGE